01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 MELANIE STONER,                              )   CASE NO. C04-2431-MAT
                                                )
10      Plaintiff,                              )
                                                )
11   v.                                         )   ORDER RE: SOCIAL SECURITY
                                                )   DISABILITY APPEAL
12 JO ANNE B. BARNHART, Commissioner            )
   of Social Security,                          )
13                                              )
        Defendant.                              )
14 _____ )

15      Plaintiff Melanie Stoner proceeds through counsel in her appeal of a final decision of the

16 Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

17 plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an

18 Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record

19 (AR), and all memoranda of record, this matter is hereby AFFIRMED.

20                          FACTS AND PROCEDURAL HISTORY

21      Plaintiff was born on XXXX, 1959.[1]  She completed a GED, as well as a secretarial college

22 course and computer training.  Plaintiff previously worked as a laborer, census worker, caregiver,

23 and receptionist.

24 _____

25      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
   General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
26 official policy on privacy adopted by the Judicial Conference of the United States.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -1

01          Plaintiff applied for SSI in October 2000, alleging a disability onset date of January 1, 1988

02   due to cervical and lumbar impairments with radiculopathy, fibromyalgia, and Meniere's disease

03   with vertigo.  (AR 178-81.)[2]  Her application was denied initially and on reconsideration, and she

04   timely requested a hearing.

05          ALJ Bennett Engelman conducted hearings in February and November 2002, taking

06   testimony from plaintiff, her mother – Nancy Carvalho, and vocational expert Susan Burkett.  (AR

07   24-83.)  The ALJ issued a decision denying plaintiff benefits (AR 122-37), but the Appeals

08   Council reversed and remanded with directions to resolve various issues (AR 166-67).  ALJ Dan

09   Hyatt conducted a supplemental hearing on September 17, 2003, taking testimony from plaintiff

10   and vocational expert Paul Morrison.  (AR 84-112.)  On March 1, 2004, ALJ Hyatt issued a

11   second decision denying plaintiff benefits.  (AR 16-23.)

12          Plaintiff appealed the second ALJ's decision to the Appeals Council, which declined to

13   review plaintiff's claim.  (AR 6-8.)  Plaintiff appealed this final decision of the Commissioner to

14   this Court.

15                                          **JURISDICTION**

16          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                                           **DISCUSSION**

18          The Commissioner follows a five-step sequential evaluation process for determining

19   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

20   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

21   engaged in substantial gainful activity since her alleged onset date. [3]  At step two, it must be

22

23          [2] A prior application for SSI benefits, filed by plaintiff in 1999, was dismissed for failure
     to timely request a hearing.

24

25          [3] As noted by the Commissioner, a claimant is not eligible for disability benefits until the
     month after she filed for SSI.  *See* 20 C.F.R. § 416.335.  Accordingly, the relevant time period for
     this claim is October 2000, the protective filing date, through March 1, 2004, the date of the ALJ's
26   decision.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -2

01 determined whether a claimant suffers from a severe impairment.  The ALJ found severe plaintiff's
02 fibromyalgia, degenerative disc disease of the lumbar spine, and myofacial pain syndrome, but
03 concluded that her depression, Meniere's disease, and cervical spine degenerative disc disease
04 were non-severe.  Step three asks whether a claimant's impairments meet or equal a listed
05 impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any
06 listed impairments.  If a claimant's impairments do not meet or equal a listing, the Commissioner
07 must assess residual functional capacity (RFC) and determine at step four whether the claimant
08 has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to
09 perform her past relevant work as a receptionist.  If a claimant demonstrates an inability to
10 perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that
11 the claimant retains the capacity to make an adjustment to work that exists in significant levels in
12 the national economy.  The ALJ alternatively found plaintiff could perform simple one to three
13 step repetitive tasks at a sedentary level, including work as an assembler, telephone operator,
14 receptionist, and animal shelter clerk.

15          This Court's review of the ALJ's decision is limited to whether the decision is in
16 accordance with the law and the findings supported by substantial evidence in the record as a
17 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more
18 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable
19 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750
20 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's
21 decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
22 2002).

23          In this case, plaintiff argues that the ALJ erred in ignoring limitations identified by the
24 Commissioner's own nonexamining physicians, in finding her depression, Meniere's Disease, and
25 cervical spine degenerative disc disease non-severe, in failing to properly evaluate her RFC, in
26 concluding she could perform her past relevant work as a receptionist or other work based on the

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -3

01 vocational expert's testimony, in improperly rejecting her witness testimony, and in rejecting her

02 own testimony.  The Commissioner asserts that the ALJ's decision is supported by substantial

03 evidence and should be affirmed.  For the reasons described below, the undersigned agrees with

04 the Commissioner that this matter should be affirmed.

05                              Opinions of Nonexamining Physicians

06       Social Security Ruling (SSR) 96-6p provides that the findings of State agency consultants

07 and other program physicians and psychologists "must be treated as expert opinion evidence of

08 nonexamining sources[.]" An ALJ "may not ignore these opinions and must explain the weight

09 given to these opinions in their decisions."  SSR 96-6p.

10       Plaintiff asserts that the ALJ ignored the physical and mental limitations identified by two

11 nonexamining State agency physicians.  (*See* AR 308 (report affirmed by Dr. Coral Hilby, finding

12 limited reaching abilities and that plaintiff could only occasionally climb, balance, stoop, kneel,

13 crouch, or crawl) and AR 343-45 (report by Dr. Charles Regets finding, *inter alia*, moderate

14 limitations in understanding, remembering, and carrying out detailed instructions, in maintaining

15 attention and concentration for extended periods, in interacting appropriately with the general

16 public, and in responding appropriately to changes in the work setting.))  She notes that the ALJ

17 never discusses these opinions and ignores them in assessing her RFC.  (*See* AR 21.)

18       The Commissioner asserts that the ALJ properly determined that plaintiff had a more

19 restrictive RFC than that identified by the nonexamining State agency physicians, by relying on the

20 opinions of treating and examining physicians who found she could perform simple, repetitive,

21 sedentary tasks.  She maintains that any error in omitting discussion of these opinions was

22 harmless given the ALJ's assignment of a more restrictive RFC.  *See, e.g.*, *Matthews v. Shalala*,

23 10 F.3d 678, 681 (9th Cir. 2003) (applying harmless error standard in assessing omission of

24 information from hypothetical to vocational expert).

25       Plaintiff accurately notes the ALJ's failure to directly address the opinions of nonexamining

26 State agency physicians – Dr. Hilby as to plaintiff's physical RFC, and Dr. Regets as to plaintiff's

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -4

01 mental RFC. However, the Commissioner correctly posits that any error in this omission was

02 harmless.

03          Dr. Hilby found plaintiff capable of light work, albeit with limited reaching abilities and

04 occasional postural limitations (AR 308, 311), while the ALJ found plaintiff more restricted

05 generally, at the sedentary level (AR 21). In reaching this conclusion, the ALJ noted that

06 numerous treating and examining physicians consistently opined that plaintiff was able to engage

07 in sedentary work. (AR 21;*see also* AR 17 (noting Dr. R. Thornton's May 2000 examination and

08 opinion plaintiff was able to engage in sedentary work) and AR 18 (noting Dr. Jolanta Olson

09 consistently assessed plaintiff capable of sedentary work.)) Although the ALJ should have directly

10 addressed the opinions of Dr. Hilby, this omission was harmless in light of the ALJ's acceptance

11 of a more restrictive physical RFC. Moreover, plaintiff fails to demonstrate that the ALJ erred in

12 his apparent preference for the opinions of treating and examining physicians in adopting that more

13 restrictive RFC. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) ("In general, more weight

14 should be given to the opinion of a treating physician than to a non-treating physician, and more

15 weight to the opinion of an examining physician than to a non-examining physician.")

16          Likewise, while the ALJ should have addressed Dr. Regets' report, this error was also

17 harmless. The ALJ's RFC assessment, limiting plaintiff to "simple one to three step repetitive

18 work tasks" (AR 21), is generally consistent with the opinions of Dr. Regets as expressed in the

19 narrative portion of his report, as opposed to the check-the-box portion of his report identifying

20 various moderate limitations. (*See* AR 345 (Dr. Regets went on to explain that plaintiff was able

21 to understand, follow, and remember at least three steps verbally presented material, would

22 function best in low stress situations, is able to persist at simple and some complex repetitive tasks,

23 that her stress tolerance limits interactivity with the public, and that her adaptability is decreased,

24 although she does have the adaptive flexibility required for independent functioning without

25 assistance.)) The RFC is further consistent with the opinions of examining physicians Drs.

26 Lawrence H. Moore and Lisa Sjodin. ( *See* AR 18 ("[Dr. Moore] completed a

01  psychological/psychiatric evaluation of the claimant in November 1999 and reported only mild

02  limitations in social and cognitive functioning. . . . [Dr. Sjodin] evaluated the claimant in March

03  14, 2001 and reported diagnosis of major depressive disorder.  However, Dr. Sjodin further

04  reported the claimant did not exhibit any objective symptoms of depression and opined that from

05  a psychiatric standpoint, the claimant was able to perform simple and repetitive tasks and was able

06  to interact well with others.") and AR 21 ("Dr. Moore and Dr. Sjodin reported no mental

07  problems and there was no psychologically based reason for her not to be able to work.  Dr.

08  Sjodin opined simple work due to the claimant [stet] medication."))  Again, to the extent Dr.

09  Regets' opinion could be construed as inconsistent with the RFC, plaintiff fails to demonstrate

10  error in the ALJ's apparent reliance on the opinions of examining physicians over that of a

11  nonexamining physician.  *See Lester*, 81 F.3d 830.

12                               Step Two – Severe Impairments

13          At step two, plaintiff must make a threshold showing that her medically determinable

14  impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*,

15  482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work activities" refers to "the

16  abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or

17  combination of impairments can be found 'not severe' only if the evidence establishes a slight

18  abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen

19  v. Cater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).  "[T]he step two inquiry is a

20  de minimis screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-

21  54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in

22  considering severity.  *Id*.

23          In this case, the ALJ found as follows at step two:

24          The medical evidence of record reveals the claimant has the medically
            determinable impairments of fibromyalgia, degenerative disc disease of the lumbar
25          spine, and a myofacial pain syndrome.  These impairments cause vocationally relevant
            limitations and are considered to be severe.  The records further reveal the diagnoses
26          of depression, Meniere's disease and degenerative disc disease of the lumbar spine

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -6

01    [stet]. However, the records also reveal the depression has improved and is only mild, her Meniere's disease is controlled with medication and her cervical spine degenerative disc disease is also mild. The [ALJ] finds these impairments to be non-severe as they do not impose any significant limitations on the claimant's physical or mental residual functional capacity to perform basic work activities.

04    (AR 19.)

05        Plaintiff argues that the ALJ mischaracterized the evidence and otherwise erred in concluding that her depression, Meniere's disease, and cervical spine degenerative disc disease were not severe impairments. With respect to Meniere's disease, she points to instances in the record as to her dizziness, falling, and difficulty walking. (*See* AR 191, 328, 380, 394-401.) As to depression, she notes that Dr. Moore summarily found mild mental limitations, without providing support for that finding, and that the reports of Dr. Sjodin and the nonexamining State agency physicians do not support the severity determination. (*See* AR 259-62, 342-45, 355B.) Finally, plaintiff points to Dr. Bruce Bell's observation of limited range of motion of her neck and her own report to Dr. Bell as to cramping pain in her upper extremities, in arguing against the finding that her cervical spine degenerative disc disease was not severe. (*See* AR 308.) She notes that the ALJ does not cite any evidence to support his conclusions as to these conditions and further posits that the ALJ failed to properly consider the combined effects of her impairments. The Commissioner points to portions of the ALJ's decision and the record supporting the ALJ's findings that these conditions were not severe.

19        Although the ALJ's decision does not neatly tie the reports of various physicians to his step two findings, it does provide sufficient support for his conclusions at this step. Following a description of the requirements for a finding at step two, the ALJ reviews the medical evidence and thereafter describes his conclusions. (AR 17-19.) As described below, the evidence cited could be reasonably construed to support the ALJ's conclusions that the conditions at issue did not significantly interfere with plaintiff's ability to perform basic work activities.

25        The ALJ's decision with respect to Meniere's disease finds support in the opinion of examining physician Dr. Douglas Meyers:

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -7

01      [Dr. Meyers] noted claimant had previously been diagnosed with Meniere's
02 disease but she was not experiencing rotational vertigo or a sense of imbalance while
   lying down.  Dr. Meyers opined the claimant's excellent hearing, lack of rotational
03 vertigo, and atypical duration of her symptoms spoke strongly against a diagnosis of
   Meniere's disease and inner ear fistula.  The symptoms were more strongly suggestive
04 of a proprioceptive disorder that may be related to her back problems and
   fibromyalgia.  Dr. Meyers also thought the claimant's medications of Meclizine and
05 Valium may be contributing to her imbalance by suppressing the input from her
   vestibular system.  (Exhibit 3F.)

06 (AR 18.)  The decision also includes the opinion of examining physician Dr. Donald E. Newell

07 that, although she had occasional limitation in climbing, balancing, kneeling, crouching and

08 crawling, plaintiff had no limitations in her ability to stand and walk.  (AR 18-19.)

09      Regarding plaintiff's depression, the ALJ's decision notes the opinions of Drs. Moore and

10 Sjodin:

11      [Dr. Moore] . . . reported only mild limitations in social and cognitive
   functioning.  (Exhibit 4F.)  [Dr. Sjodin] . . . reported diagnosis of a major depressive
12 disorder.  However, Dr. Sjodin further reported the claimant did not exhibit any
   objective symptoms of depression and opined that from a psychiatric standpoint, the
13 claimant was able to perform simple and repetitive tasks and was able to interact well
   with others.  (Exhibit 15F.)
14

15 (AR 18.)  As stated above, plaintiff fails to demonstrate that the ALJ improperly preferred the

16 opinions of these examining physicians over the nonexamining physician.  *See Lester*, 81 F.3d 830.

17      As noted, plaintiff points to the opinion of Dr. Bell and her own reports to Dr. Bell as

18 evidence supporting a step two severity finding as to her cervical spine degenerative disc disease.

19 However, the ALJ's decision notes that Dr. Bell found only "mild disc bulging at C4-5 and C5-6"

20 in April 1999.  (AR 18.)  It also provides reasoning for according Dr. Bell's opinions little weight:

21      The [ALJ] has considered the opinion of Dr. Bell rendered in December 2001,
   found at Exhibit 19F, wherein he opined the claimant was unemployable and has
22 accorded such little weight.  It is clear from reading Dr. Bell's records that he has
   chosen to ignore his own subjective diagnostic findings, his previous opinions of the
23 claimant's ability to engage in sedentary work, and his own treatment records and has
   instead relied solely on the claimant's numerous, unsupported subjective pain
24 complaints.  Diagnostic studies have either been benign or only revealed mild
   abnormalities.  Dr. Bell's opinion is not supported by the other numerous treating and
25 examining physicians who have consistently opined the claimant is able to engage in
   sedentary work.  Furthermore, Dr. Bell's December 2001 opinion is contradicted by
26 his opinion rendered in January 2003 that the claimant ***was*** able to engage in sedentary

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -8

01      work (Exhibit 30F/pgs 6-7).

02  (AR 21 (emphasis in original.))   As addressed on a different basis below, plaintiff fails to

03  demonstrate error in this assessment.

04      Finally, plaintiff does not demonstrate that the ALJ failed to consider the combined effects

05  of her impairments. ( *See* AR 17 (noting that the ALJ must consider whether plaintiff "has a

06  'severe' impairment or combination of impairments.") and AR 20 (finding plaintiff's medically

07  determinable impairments did not, "either singularly or in combination," meet a listing level

08  impairment.))  Accordingly, for this reason, and for the reasons described above, plaintiff fails to

09  demonstrate error at step two.

10                                 <u>RFC</u>

11      RFC is the most a claimant can do considering his or her limitations or restrictions. *See*

12  SSR 96-8p. Plaintiff argues that, in assessing her RFC, the ALJ violated SSR 96-8p in numerous

13  respects: (1) failing to assess whether she was capable of working on a "regular and continuing

14  basis"; (2) failing to consider all of her impairments, including those which are not severe; (3)

15  ignoring and misinterpreting the opinions of her treating doctors, Drs. Thornton, Bell, and Olson

16  – who opined that she was capable of performing at a sedentary level at least half-time, but not

17  for a varying number of weeks, and improperly rejecting the opinion of Dr. Bell given this

18  misinterpretation; (4) failing to consider her reaction to stress as assessed by both Dr. Regets and

19  Dr. Sjodin; and (5) failing to conduct a function-by-function analysis with "a narrative discussion

20  describing how the evidence supports each conclusion." *See* SSR 96-8p.  However, for the

21  reasons described below, plaintiff fails to demonstrate reversible error on any of these points.

22  1.    <u>"Regular and Continuing Basis" and Full-Time Work</u>

23      Pursuant to SSR 96-8p, "RFC is an assessment of an individual's ability to do sustained

24  work-related physical and mental activities in a work setting on a regular and continuing basis[,]"

25  meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."  Plaintiff maintains

26  that the ALJ failed to consider her capability in this regard, and misinterpreted the opinions of Drs.

01 Thornton, Bell, and Olson as concluding she could perform full-time work.  The Commissioner

02 does not directly address either of these issues.  In any event, plaintiff's arguments clearly lack

03 merit.

04      Although the ALJ does not expressly state as such, there is no indication he failed to assess

05 plaintiff's ability to work on a "regular and continuing basis."  SSR 96-8p.  The whole of his

06 decision reflects that he properly evaluated plaintiff's RFC in this respect.

07      Moreover, plaintiff, rather than the ALJ, appears to misinterpret the reports of Drs.

08 Thornton, Bell, and Olson with respect to half-, versus full-time work.  These physicians

09 completed Washington State Department of Social & Health Services (DSHS) forms which

10 inquire as to an individual's ability to perform "at least half-time in a normal day-to-day work

11 setting," and how long the physician estimates an individual would be unable to perform "at least

12 half-time in a normal day-to-day work setting."  (*See*, *e.g.*, AR 288.)  The forms do not reflect that

13 these physicians believed plaintiff was capable of performing sedentary work on *only* a half-time

14 basis; they reflect determinations that plaintiff could perform at a sedentary level for "at least" that

15 amount of time.  ( *See* AR 288 (Dr. Thornton's May 2000 form), AR 295 and 378 (Dr. Bell's

16 September 2000 form), AR 392 (Dr. Bell's February 2002 form), AR 431 (Dr. Bell's 2003 form),

17 and AR 266-281, 426-27 (Dr.'s Olson's numerous forms, ranging from March 1998 through July

18 2003.))

19      Additionally, Drs. Thornton and Olson found plaintiff unable to perform work on at least

20 a half-time basis for a period substantially under twelve months, whereas, pursuant to 20 C.F.R.

21 § 404.1509, a finding of disability requires an impairment to have lasted, or be expected to last,

22 for a continuous period of at least twelve months.  (*See* AR 288 (16-22 weeks) and AR 266-281,

23 426-27 (8 to 24 weeks.))  Only Dr. Bell found plaintiff unable to perform work on an "indefinite"

24

25

26

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -10

01  basis. (AR 431.)[4] Yet, as noted by the ALJ, Dr. Bell otherwise found her capable of sedentary

02  work. (AR 21.) Plaintiff fails to demonstrate the ALJ erred in this respect.

03      2.      Consideration of All Impairments and Stress

04      Plaintiff makes a cursory argument that the ALJ failed to consider all of her impairments,

05  including those deemed not severe. She asserts that the ALJ minimized many of her impairments

06  and failed to address ramifications of her depression, fatigue, reduced concentration and pace,

07  anxiety, dizziness, and falling. Again, the Commissioner failed to directly address this argument.

08      A review of the ALJ's decision does not support plaintiff's contention. Instead, the

09  decision reflects a thorough review of the evidence, including the reports and records from the

10  various physicians, plaintiff's testimony, and the testimony of her witness. (AR 17-21.) In

11  describing the RFC assessment, the ALJ indicates consideration of plaintiff's capacity to work

12  "despite medically determinable impairments[,]" and that he "shall consider her subjective

13  allegations." (AR 20.) His credibility assessment, as discussed in more detail below, touches

14  generally on her "subjective allegations," and specifically on dizziness and falling. (AR 20-21.)

15  Accordingly, plaintiff fails to demonstrate error in the ALJ's consideration of her various

16  impairments at step four.

17      Plaintiff also argues that the ALJ failed to consider her reaction to stress in assessing her

18  RFC, noting that both Dr. Regets and Dr. Sjodin found a need for a low stress environment. (*See*

19  AR 342, 345.) However, plaintiff again fails to support her contention.

20      Dr. Sjodin opined as follows:

21      The claimant currently appears to have the ability, from a psychiatric standpoint, to
        perform simple and repetitive tasks. She is thought likely to interact well with others.

22      The examiner feels the usual stressors encountered in competitive work could possibly
        exacerbate her depression; however, at the time of this evaluation, her depressive

23

24      [4] Although not addressed in the ALJ's decision, Dr. Bell may, in fact, have otherwise found
        plaintiff unable to work for six month periods. (*See* AR 295, 378, 392.) Plaintiff describes this

25  notation as illegible, whereas the Commissioner interprets one of the notations to read "68" weeks.
    (*See* AR 295 and 378.) However, a comparison of these reports may support the conclusion that

26  Dr. Bell found plaintiff unable to work for six months. (*Compare* AR 295 and 378, *with* AR 392.)

01  symptoms appeared to be fairly mild from an objective standpoint, and if she were to
    be considered to be disabled, the examiner feels it would be for reasons related to her
02  medical condition.

03  (AR 342.)   Contrary to plaintiff's contention, this opinion does not directly conclude, or even

04  necessarily infer, the need for a low stress environment.   Indeed, its only reference to stress is

05  qualified by the phrase "could possibly" and the notation that her depressive symptoms appeared

06  fairly mild.   The phrase "could possibly" does not satisfy plaintiff's burden of proof at this step.

07          Dr. Regets did explicitly note that plaintiff "would function best in low stress situations

08  where she has time to consider alternatives and think through solutions," and that her "diminished

09  stress tolerance limits interactivity with the general public."   (AR 345.)   However, as discussed

10  above, Dr. Regets' opinions were generally consistent with the ALJ's RFC assessment and, to the

11  extent they were not consistent – particularly in excluding any reference to stress – plaintiff fails

12  to demonstrate any error in the ALJ's apparent reliance on the opinions of examining physicians

13  Drs. Moore and Sjodin over the opinion of nonexamining physician Dr. Regets.

14          3.   Function-by-Function Assessment

15          Plaintiff asserts that, rather than conducting a function-by-function analysis, the ALJ stated

16  in a conclusory fashion that plaintiff could perform simple and repetitive sedentary work.   (See AR

17  21.)   The Commissioner appears to argue in response that the ALJ performed this assessment by

18  adopting Dr. Newell's opinion that plaintiff had no limitations in her ability to lift, carry, stand,

19  walk, sit, push, or pull, that he thoroughly addressed the opinions from examining and treating

20  sources, and that he properly found plaintiff could perform sedentary, simple, repetitive tasks.

21  (See AR 17-19, 21.)

22          At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

23  assess her work-related abilities on a function-by-function basis, including a narrative discussion.

24  See 20 C.F.R. § 416.945; SSR 96-8p.   Only after this function-by-function assessment may the

25  RFC be expressed in terms of the exertional levels of work, such as sedentary or light.

26          In this case, as stated above, the ALJ's decision reflects a thorough review of the evidence,

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -12

01 including the reports and records from the various physicians, plaintiff's testimony, and the

02 testimony of her witness. (AR 17-21.) That assessment sufficiently addressed plaintiff's work-

03 related abilities on a function-by-function basis pursuant to SSR 96-8p.

Past Relevant Work at Step Four

05      Plaintiff argues that the ALJ's step four finding that she can perform her past relevant work

06 as a receptionist is unsupported by the evidence and contrary to the law. She maintains that the

07 ALJ failed to perform a functional analysis of her past job and to compare the physical and mental

08 demands to her RFC, in contravention of SSR 82-62. *See* SSR 82-62 (decision concluding

09 claimant able to perform past relevant work must include (1) finding of fact as to individual's RFC;

10 (2) finding of fact as to physical and mental demands of past job/occupation; and (3) finding of fact

11 that the individual's RFC would permit a return to past job/occupation); *Sivilay v. Apfel*, 143 F.3d

12 1298, 1299 (9th Cir. 1998) (remanding, without discussion, for an investigation into the demands

13 of claimant's past relevant work in comparison to physical and mental abilities, in accordance with

14 SSR 82-61 and SSR 82-62). She further argues that the hypothetical presented to the vocational

15 expert as to her past work was based on a deficient RFC assessment and failed to include all of

16 her limitations.

17      Plaintiff has the burden of establishing her inability to perform past relevant work at step

18 four. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Testimony of a vocational expert

19 at step four is useful, but not required. *Matthews*, 10 F.3d at 681. A hypothetical posed to a

20 vocational expert must include all of the claimant's functional limitations supported by the record.

21 *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A

22 vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to

23 support a finding that a claimant can perform jobs in the national economy. *Matthews*, 10 F.3d

24 at 681 (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

25      In this case, as noted above, plaintiff fails to establish that the ALJ's RFC assessment was

26 deficient. Plaintiff further fails to demonstrate that the ALJ's hypothetical to the vocational expert

01  was in any respect deficient.  Finally, the ALJ properly complied with SSR 82-62 in considering

02  the functional requirements of plaintiff's past job in conjunction with her RFC.  As argued by the

03  Commissioner, the ALJ appropriately crafted a hypothetical including plaintiff's age, education,

04  past relevant work, and an RFC assessment of sedentary work, with a limitation to simple,

05  repetitive tasks, based on the medical evidence of record.  (AR 92-93.)  The vocational expert

06  testified as to the sedentary, semi-skilled nature of plaintiff's past relevant work as a receptionist,

07  and opined that plaintiff could perform that work.  (*Id.*)  The ALJ's adoption of that testimony at

08  step four (AR 21) is, therefore, properly supported and compliant with SSR 82-62.

09                                  Other Work at Step Five

10          In regard to the same hypothetical outlined above, the ALJ testified that plaintiff could

11  perform other jobs, including work as an assembler, telephone operator, receptionist, and animal

12  shelter clerk.  (AR 93-94.)  With respect to sedentary assembler positions, the vocational expert

13  testified as to the existence of 158,000 of those jobs nationally.  (AR 94.)  The ALJ recounted this

14  testimony in his decision and reached an alternative step five conclusion that plaintiff would be able

15  to make an adjustment to other jobs existing in significant numbers in the national economy.  (AR

16  22.)

17          Plaintiff also takes issue with this alternative step five finding.  Outside of again arguing

18  as to the deficiency of the RFC and hypothetical, which is addressed above, plaintiff asserts error

19  in the vocational expert's identification of two semi-skilled jobs without identifying any

20  transferable skills, and in the failure to provide reliable evidence as to a significant number of

21  unskilled, full-time sedentary assembler jobs.

22          Any failure to identify transferable skills as to two semi-skilled jobs is obviated by the

23  ALJ's identification of an unskilled job – small product assembler.  *See* SSR 82-41 (even where

24  there are no transferable skills, a finding of disability may be based on the ability to perform

25  unskilled work).  However, plaintiff raised a number of arguments in the hearing as to how many

26  of the 158,000 sedentary assembler jobs identified were unskilled and full-time.  (*See* AR 95-111.)

01   At one point, the vocational expert identified "in the Portland area including Beaverton, Southwest

02   Washington probably 500 plus assembly type jobs in the sedentary category," in response to a

03   question as to "whether or not there are substantial numbers of small product assembly positions

04   performed at the sedentary, simple, repetitive basis within the regional area[.]" (AR 105.)

05        At step five, the Commissioner considers that work exists in the national economy where

06   it exists in significant numbers either in the region where the claimant lives or in several other

07   regions in the country.  20 C.F.R. § 416.966(a).  Whether a significant number of jobs exist is a

08   question of fact for the ALJ.  *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).  The Ninth

09   Circuit has not "established the minimum number of jobs necessary to constitute a 'significant

10   number.'"  *Barker v. Secretary of Heath and Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir.

11   1989) (finding 1266 local positions a significant number of jobs; noting decisions finding from as

12   few as 500 jobs, in an Eighth Circuit case, to 3,750 to 4,250 jobs, in      *Martinez*, to constitute

13   significant numbers of jobs; also noting Ninth Circuit district court decisions finding 600 jobs and

14   less than half of 600 jobs to constitute a significant number of jobs).  However, "[i]solated jobs

15   that exist only in very limited numbers in relatively few locations outside of the region where [a

16   claimant lives is] not considered work which exists in the national economy."  20 C.F.R. §

17   416.966(b).

18        The vocational expert's testimony as to the "500 plus" assembler jobs "performed at the

19   sedentary, simple, repetitive basis" in the regional area identified a significant number of jobs

20   plaintiff could perform.  *See*, *e.g.*, *Barker*, 882 F.2d at 1478-79.  However, despite this testimony

21   and the extended discussion of this issue in the hearing, the ALJ simply noted the vocational

22   expert's testimony as to the 158,000 sedentary assembler positions in existence nationally.  (AR

23   22.)  The ALJ's decision should have included reference to the vocational expert's testimony as

24   to the "500 plus" assembler jobs described above.  Nonetheless, the omission of this information

25   was harmless.  Because this was an alternative finding, the ALJ's decision may be upheld at step

26   four.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -15

01                                    Witness Testimony

02         Plaintiff argues that the ALJ improperly rejected the witness statement of her mother,

03    Nancy Carvalho.  The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is

04    competent evidence that an ALJ must take into account, unless he or she expressly determines to

05    disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*,

06    236 F.3d 503, 511 (9th Cir. 2001).

07         In this case, the ALJ found the statements of plaintiff's mother "generally credible to the

08    extent she is reporting her observations of the behaviors the claimant demonstrates."  (AR 21.)

09    The ALJ added:

10         She is not knowledgeable in the medical and/or vocational fields and thus is unable to
           rendered [stet] opinions on how the claimant's mental and physical impairments
11         impact her overall abilities to perform basic work activities at various exertional
           levels.  Further, the statements of this individual are not fully supported by the medical
12         record as a whole or by the majority of the opinion expressed by the credible treating
           and examining physicians.
13

14    (AR 21.)

15         Plaintiff argues that the absence of medical or vocational expertise and the lack of full

16    support by the medical record are not legitimate reasons to reject witness statements.  However,

17    the ALJ did not reject Carvalho's statement; instead, he found her generally credible.  Moreover,

18    plaintiff fails to demonstrate that the ALJ otherwise erred in his assessment of this witness

19    statement.  That is, the ALJ correctly distinguished this lay testimony from that of a medical or

20    vocational expert, and appropriately noted that her testimony lacked support from the medical

21    record as a whole.

22                                        Credibility

23         Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

24    reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

25    *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

26    ALJ must render a credibility determination with sufficiently specific findings, supported by

01  substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

02  testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

03  F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her

04  conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

05  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

06  ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

07  his testimony and his conduct, his daily activities, his work record, and testimony from physicians

08  and third parties concerning the nature, severity, and effect of the symptoms of which he

09  complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

10      In this case, the ALJ rendered the following credibility assessment:

11          The [ALJ] has considered the claimant's testimony and has found it generally credible
            to the extent she does have medically determinable impairments that do cause
12          significant vocationally relevant limitations, but not to the extent she is completely
            disabled by them. Objective findings as noted above in conjunction with the opinions
13          expressed by the credible treating and examining physicians reveal the claimant retains
            the ability to perform work activities despite limitations resulting from her
14          impairments. The claimant's subjective allegations are inconsistent with the reports
            of examining and treating doctors. Dr. Thornton and Dr. Olson have reported the
15          claimant was able to engage in sedentary exertion. Dr. Moore and Dr. Sjodin
            reported no mental problems and there was no psychologically based reason for her
16          not to be able to work. Dr. Sjodin opined simple work due to the claimant [stet]
            medication. Furthermore, doubt is brought upon the claimant's credibility as she
17          claims profound dizziness but has rarely used a cane, drove herself to the hearing, and
            has never fallen out of a chair.

18

19  (AR 21.)

20      Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her

21  testimony. However, the ALJ appropriately relied on inconsistencies between plaintiff's testimony

22  and the reports of examining and treating doctors.  As noted above, the ALJ did not

23  mischaracterize the reports of those physicians. Also, while Dr. Sjodin did not necessarily report

24  "no mental problems," she did note "no objective evidence of depression." (AR 342.) The ALJ

25  also appropriately raised doubt as to plaintiff's claim of profound dizziness by pointing to

26  testimony which could be reasonably construed as contradictory to such a claim. Finally, contrary

01  to plaintiff's assertion, the ALJ's decision reflects consideration of the criteria outlined in SSR 96-

02  7p.  Indeed, the ALJ outlined those very factors just prior to rendering his credibility assessment.

03  (AR 20.)  Accordingly, plaintiff fails to support her contention that the ALJ failed to provide clear

04  and convincing reasons for partially rejecting her testimony.

05                                                **CONCLUSION**

06          The ALJ's decision is in accordance with the law and his findings supported by substantial

07  evidence in the record as a whole.  *See Penny*, 2 F.3d at 956.  As such, this matter is AFFIRMED.

08          DATED this  29th  day of September, 2005.

09

10                                          Mary Alice Theiler
                                            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -18